**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**
**www.flmb.uscourts.gov**

IN RE:

                                      CASE NO. 6:24-bk-05475-TPG

IVF ORLANDO, INC.,                  CHAPTER 11

      Debtor.

_____/

OVERTON FUNDING, LLC,

      Plaintiff,

v.                                        ADV. PRO. NO.

IVF ORLANDO, INC.,

      Defendant.

_____/

## COMPLAINT FOR DECLARATORY AND OTHER RELIEF

Plaintiff, Overton Funding, LLC ("Overton"), by and through its undersigned counsel, for its Complaint for Declaratory and Other Relief states as follows:

### JURISDICTION AND VENUE

1. The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334. The Court may hear and determine this adversary proceeding because this adversary proceeding is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(I).

2. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409.

### PARTIES

3. Overton is a Florida limited liability company with its offices located in Hollywood, Florida.

4. Defendant, IVF Orlando, Inc. ("Debtor"), is the Debtor in the underlying bankruptcy case.

**FACTS**

5. On September 16, 2024, Overton and the Debtor entered into an Agreement under which the Debtor sold, assigned and transferred to Overton $166,800 of "future accounts, contract rights, and other obligations arising from or relating to the payment of monies from [Debtor's] customers and/or other third party payors...for the payment of [Debtor's] sale of goods or services" including, "all payments made by cash, check, credit or debit card, electronic transfer or other form of monetary payment in the ordinary course of [Debtor's] business." The property sold, assigned and transferred to Overton as outlined is referred to in the Agreement as the "Receivables." A true and correct copy of the Agreement is attached hereto as **Exhibit A**.

6. The Agreement provides, and the Debtor expressly acknowledged that the $166,800 of Receivables it sold to Overton "are the property of Overton and not the property of [the Debtor]" and agreed that "it is a fiduciary for Overton" and would "hold Receivables in trust for the benefit of Overton in its capacity as a fiduciary for Overton." *See* Agreement, ¶1.

7. The Agreement sets forth a procedure for Overton to obtain the Receivables sold to it by the Debtor under the Agreement.

8. The Debtor was required to designate a bank account in the Agreement which would operate as a trust account into which all Receivables would be deposited that had to be approved by Overton. This bank account is defined in the Agreement as the Account.

9. Overton was then to debit the Initial Estimated Payment, defined in the Agreement as $3,971, weekly from the Account. The Initial Estimated Payment specified in the Agreements was meant to equal 6%, defined in the Agreement as the Specified Percentage, of Receivables

based upon historical revenue information provided by the Debtor to Overton during due diligence and was subject to adjustment pursuant to a reconciliation procedure that is set forth in Paragraph 4 of the Agreement that would be conducted at the Debtor's request to ensure the amount ultimately debited by Overton from the Account equaled the Specified Percentage of Receivables collected by the Debtor on a weekly basis.

10.    Debits of the Specified Percentage of Receivables from the Account were to continue as described so long as the Debtor was collecting Receivables and until the full amount of Receivables purchased by Reliance under the Agreement were collected.  However, the Debtor's inability to remit Receivables to Overton because it went out of business or did not collect any Receivables in a given week is not an event of default under the Agreement.

11.     Ultimately, only two of the weekly debits were made under the agreement – on September 20, 2024 and September 27, 2024, respectively – and then the Debtor, on October 8, 2024 ("Petition Date") filed its voluntary petition for relief under the United States Bankruptcy Code.  Thus, as of the Petition Date, the Debtor had not remitted $158,858 of the Receivables it sold to Overton.

12.    Prior to entering into the Agreement with the Debtor, Overton conducted due diligence, and the Debtor made certain representations and warranties to Overton in connection with its due diligence that Overton relied upon when it agreed to enter into the transaction.

13.    Importantly, the Debtor represented and warranted to Overton that as of the date the Agreement was entered into that it did not contemplate or anticipate filing for bankruptcy. *See* Agreement, ¶25.

14.    However, less than 30 days after entering into the Agreement and obtaining payment of $117,600 from Overton, the Debtor filed for bankruptcy.

15.    Through this action, Overton seeks a determination that the Receivables the Debtor sold to it are not property of the bankruptcy estate and recovery of such Receivables or, in the alternative, to the extent the transaction is for a true sale and, instead, gave rise to a debt, to except the debt from any discharge the Debtor may receive in the case.

**COUNT I- DETERMINATION OF WHETHER RECEIVABLES SOLD, ASSIGNED AND TRANSFERRED TO OVERTON BY THE DEBTOR ARE PROPERTY OF THE BANKRUPTCY ESTATE**

16.    Overton incorporates by reference its allegations in Paragraphs 1 through 15 of the Complaint.

17.    Under the Agreement, the Debtor sold Receivables to Overton.  The Receivables the Debtor sold to Overton are accounts, as that term is defined in UCC§ 9-102(2).

18.    As the transaction between the Debtor and Overton was a sale of accounts, the Debtor retained no legal or equitable interest in the accounts it sold to Overton under the Agreement, making such accounts (i.e. the Receivables) not property of the bankruptcy estate because the Debtor had no legal or equitable interest in them as of the Petition Date.  *See, e.g.,* UCC §9-318(a); *In re R&J Pizza Corp.*, 2014 Bankr. LEXUS 5461 (Oct. 14, 2014) (engaging in true sale analysis); 11 U.S.C. §541(a).

19.    The following factors, among other factors, further demonstrate that the transaction evidenced by Agreement is a true sale of accounts and, as such, the Debtor retained no legal or equitable interest in the Receivables it sold to Overton:

   a.    The language in the Agreement consistently refers to the transaction as a purchase and sale.

   b.    Overton has no recourse if Debtor goes out of business, experiences a slowdown in business or a delay in collecting Receivables.  Such circumstances are not events of default under the Agreement.

c.      The Debtor has no right to repurchase the Receivables sold to Overton under the Agreements.

d.      The Receivables were deposited into a trust account and the Debtor was merely a fiduciary for Overton for collection purposes.

**WHEREFORE**, Overton respectfully requests that this Honorable Court enter a judgment declaring that the uncollected Receivables in the amount of $158,858 sold to Overton by the Debtor under the Agreement are not property of the bankruptcy estate and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

### COUNT II- DECLARATON THAT DEBTOR MUST TURNOVER THE UNCOLLECTED RECEIVABLES TO OVERTON IF THEY ARE DEEMED TO NOT BE PROPERTY OF THE BANKRUPTCY ESTATE

20.      Overton incorporates by reference its allegations in Paragraphs 1 through 19 of the Complaint.

21.      To the extent the Receivables are determined to be not property of the bankruptcy estate, the Debtor is obligated to turnover the uncollected Receivables to Overton as a matter of law.  *See In re Florian*, 233 B.R. 25, 27 (Bankr. D. Ct. 1999) (directing trustee to turn over insurance proceeds that did not constitute property of the debtor's estate); *Matter of Georgian Villa, Inc.*, 10 B.R. 79, 84-85 (Bankr. N.D. Ga. 1981) (holding that, where it appears that the debtor has no beneficial interest in the property, such property should be turned over to its true owner).

**WHEREFORE**, Overton respectfully requests that, to the extent the Court determines that the uncollected Receivables are not property of the bankruptcy estate, that the court enter a judgment declaring that the Debtor is obligated to turnover the uncollected Receivables to Overton and granting such other and further relief as this Court deems just and proper.

## COUNT III- BREACH OF FIDUCIARY DUTY

22.    Overton incorporates by reference its allegations in Paragraphs 1 through 21 as though fully set forth herein.

23.    Under the Agreement, the Debtor expressly agreed to be a fiduciary for Overton, which included the duty to hold the Receivables in trust for the benefit of Overton.

24.    The Debtor has breached its fiduciary duties to Overton by, among other things, failing to hold the Receivables in trust for the benefit of Overton.  Instead, the Debtor has been utilizing the Receivables throughout the pendency of the case.  The Debtor also sought authority from this Court to use cash collateral without disclosing to the Court that it had a fiduciary duty to hold the Receivables on trust and that the Receivables had been sold pre-petition to Overton.

25.    Overton has been injured by the Debtor's breach of its fiduciary duties to Overton because the Debtor has used the Receivables it sold to Overton in violation of the Agreement.

**WHEREFORE**, Overton respectfully requests that this Honorable Court enter an Judgment in its favor against the Debtor in the amount of $158,858, or, in the alternative in the amount of damages the Court finds Overton has suffered as a result of the Debtor's breach of its fiduciary duties to Overton and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

## COUNT IV- CONVERSION

26.    Overton incorporates by reference its allegations in Paragraphs 1 through 25 of the Complaint as though fully set forth herein.

27.    The Debtor sold Receivables to Overton pre-petition and, as such, Overton owns the Receivables.

28. The Debtor has used the Receivables it purchased and owns without Overton's consent, without notifying the Court of Overton's interest in the Receivables when it sought authority to use cash collateral, and in contravention of a trust agreement between it and Overton. A demand for return of the Receivables by Overton would be futile because it is not possible for the Debtor to return the actual Receivables used by the Debtor during the pendency of the case.

28. Overton has unquestionably been damaged by the Debtor's use of the Receivables it owns as the Receivables are now not available for turnover to Overton as required.

**WHEREFORE**, Overton respectfully requests that this Honorable Court enter a judgment in favor of Overton and against the Debtor in the amount of $158,858 or in the amount of the Receivables the Court finds have been converted and grant such other and further relief as this Court deems just and proper considering the facts and circumstances of this case.

## COUNT V- EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. §523(a)(2)(A)

29. Overton incorporates the allegations in Paragraphs 1 through 28 of the Complaint as though fully set forth herein.

30. To the extent the transaction between the Debtor and Overton is deemed to not be a true sale, Overton contends that the $158,686 owed to it under the Agreement is not subject to discharge under 11 U.S.C. §523(a)(2)(A).

31. The Debtor entered into the Agreement and received payment of $117,600 from Overton less than 30 days prior to the Debtor filing its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

32. At the time the Debtor entered into the Agreement with Overton it represented and warranted to Overton that it did not contemplate or anticipate filing for bankruptcy.

33.     These representations were false when they were made by the Debtor to Overton. This is evident from the fact that the Debtor filed for bankruptcy less than 30 days after making such representations.

34.     Overton reasonably relied on the Debtor's representations that it did not contemplate or anticipate filing for bankruptcy when it entered into the Agreement with Overton because there were no red flags present when Overton conducted its due diligence prior to entering into the Agreement with the Debtor.  Overton would not have entered into the transaction if the Debtor had disclosed it intended to file for bankruptcy.

35.     Overton has been damaged because of the Debtor's false representation that it did not contemplate filing for bankruptcy. Overton was only able to collect a total of $7,942 of the Receivables it purchased from the Debtor after paying $117,600 to the Debtor and even though the Debtor has continued to operate and collect Receivables since it entered into the Agreement and during the pendency of this case.

**WHEREFORE**, Overton respectfully requests that this Honorable Court enter a judgment in its favor of it finding that $158,868, plus fees and interest, is excepted from any discharge obtained by the Debtor in this case pursuant to 11 U.S.C. §523(a)(2)(A) and granting such other and further relief as this Court deems just and proper.

### COUNT VI- EXCEPTION FROM DISCHARGE UNDER 11 U.S.C. §523(a)(2)(B)

36.     Overton incorporates the allegations in Paragraphs 1 through 35 of the Complaint as though fully set forth herein.

37.     To the extent the transaction between the Debtor and Overton is deemed to not be a true sale, Overton contends that the $158,686 owed to it under the Agreement is not subject to discharge under 11 U.S.C. §523(a)(2)(B).

38.     The Debtor entered into an Agreement with Overton and received payment of $117,600 from Overton less than 30 days prior to the Debtor filing its voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code.

39.     At the time the Debtor entered into the transaction with Overton it represented and warranted to Overton, in writing, that it did not contemplate or anticipate filing for bankruptcy.

40.     These representations were false when they were made by the Debtor to Overton. This is evident from the fact that the Debtor filed for bankruptcy shortly after making the representations to Overton.

41.     Overton reasonably relied on the Debtor's written representations that it did not anticipate or contemplate filing for bankruptcy because there were no red flags present when Overton conducted its ordinary and standard due diligence prior to entering into the Agreement with the Debtor. Overton would not an entered into the Agreement if it has known that the Debtor contemplated filing for bankruptcy at that time.

42.     Overton has been damaged because of the Debtor's false representation that it did not contemplate filing for bankruptcy. Overton was only able to collect a total of $7,942 of the Receivables it purchased from the Debtor after paying $117,600 to the Debtor and even though the Debtor has continued to operate and collect Receivables since it entered into the Agreement and during the pendency of this case.

**WHEREFORE**, Overton respectfully requests that this Honorable Court enter a judgment in its favor of it finding that $158,868, plus fees and interest, is excepted from any discharge obtained by the Debtor in this case pursuant to 11 U.S.C. §523(a)(2)(B) and granting such other and further relief as this Court deems just and proper.

Dated:  February 18, 2025

Respectfully Submitted,

*/s/ Lauren G. Raines*
Lauren G. Raines, Esq.
Fla. Bar No. 11896
BRADLEY ARANT BOULT CUMMINGS LLP
1001 Water Street, Suite 1000
Tampa, FL 33602
P: (813) 559-5500 | F: (813) 229-5946
Primary email: lraines@bradley.com
Secondary email: jbrandt@bradley.com
*Local Counsel for Overton Funding LLC*

-and-

KAMINSKI LAW, PLLC
Shanna M. Kaminski
*Pro Hac Vice Admission Pending*
P.O. Box 247
Grass Lake, MI 49240
(248) 462-7111
skaminski@kaminskilawpllc.com